**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

DEBRA J. WELLENSTEIN,

Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

No. C 14-4043-MWB

**MEMORANDUM OPINION AND
ORDER ON JUDICIAL REVIEW OF
DENIAL OF PLAINTIFF'S
APPLICATION FOR SOCIAL
SECURITY DISABILITY BENEFITS**

---

**TABLE OF CONTENTS**

I.   **INTRODUCTION**.................................................................2
   A.   *Background* .............................................................2
   B.   *Disability Determinations And The Burden Of Proof* .......3
   C.   *The ALJ's Findings* ...................................................6

II.  **LEGAL ANALYSIS** ...........................................................7
   A.   *The Substantial Evidence Standard* ............................7
   B.   *Discussion*.................................................................9
      1.   *Failure to develop the record and failure to apply SSR
         14-1P*.................................................................9
         a.   *Applicable standards* ..................................9
         b.   *Medical and opinion evidence* ................. 11
         c.   *Claims of chronic fatigue syndrome and the
            ALJ's findings* ........................................ 14
         d.   *Analysis* ................................................. 15
            i.   *Duty to develop the record* ............. 15
            ii.  *New ruling* ................................... 19
      2.   *Evaluation of subjective allegations* ................... 23
         a.   *Applicable standards* ................................ 23
         b.   *The ALJ's findings* ................................. 26
         c.   *Analysis* ................................................. 27

III. **CONCLUSION** ............................................................. 28

This matter is before me pursuant to Debra Wellenstein's application for Disability Insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 et seq. Wellenstein seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for benefits. Wellenstein argues the Commissioner erred by failing to consider a change to the regulatory code that occurred during the pendency of her case. Wellenstein also argues that the agency failed develop the administrative record (AR) regarding her chronic fatigue syndrome.

## I.  INTRODUCTION

### A.  Background

Wellenstein was born in 1966 and was 47 years old at the time of the Administrative Law Judge's (ALJ) decision. She lives with her husband in Whiting, Iowa. Wellenstein has a high school education and has taken some online college courses. For many years, Wellenstein and her husband ran a floor maintenance (cleaning) business. Wellenstein would work a few days a week for the business, but it closed in 2010. Her husband subsequently began receiving social security disability benefits.

Wellenstein filed her application for disability benefits on October 20, 2011, alleging an onset date of September 1, 2011. The Social Security Administration denied the claimant's application initially and upon reconsideration. ALJ Jan Dutton heard Wellenstein's case on January 23, 2013, and entered a ruling denying Wellenstein's claim on February 13, 2013. On April 9, 2014, the Appeals Council denied review and the ALJ's decision stands as the final decision of the Commissioner. Wellenstein timely filed the present appeal on June 9, 2014. On January 23, 2015, Judge O'Brien held a hearing on Wellenstein's claim. This case was reassigned to me on August 20, 2015. I have

reviewed the record, along with the audio recording of the hearing, and now enter the following ruling.

## B.      *Disability Determinations And The Burden Of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the

claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; see 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or,

in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); see 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined at Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### C.    The ALJ's Findings

In this case, the ALJ applied the appropriate methodology and found:

(1)    The claimant has not engaged in substantial gainful activity since September 1, 2011, the alleged onset date (20 C.F.R. § 404.1571 et seq.).  The claimant has the following severe impairments, obesity, depression and anxiety.  (20 C.F.R. § 404.1520(c)).

(2)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§§ 404.1520(d), 404.1525 and 404.1526).

(3)    The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06.

(4)    Applying "paragraph B," the claimant has no difficulties in the activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace; and no episodes of decompensation.  Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.  Additionally, the "paragraph C" criteria have not been satisfied.

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except that the claimant is limited to unskilled work with an SVP of 1-2. Claimant's work should be routine and repetitive. Social interaction should not be more than occasional and the claimant should avoid constant, intense, and frequent interaction with supervisors and the general

6

public. The claimant should not work on ladders more than occasionally.

(6) The objective findings fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. Additionally, claimant's credibility is reduced by statements that she cannot afford to drive to Sioux City to find work.

(7) The third party report provided by claimant's husband is not entitled to great weight.

(8) The medical opinion of Dr. O'Shea is entitled to little weight to the extent it is inconsistent with the RFC.

(9) Claimant is unable to perform past relevant work.

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569 and 404.1569(a)).

(11) The claimant was not under a disability, as defined in the Social Security Act, from September 1, 2011, through the date of this decision (20 C.F.R. § 404.1520(f) and 20 C.F.R. § 416.920(f)).

AR 11-18.


## II.   LEGAL ANALYSIS

### A.   The Substantial Evidence Standard

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court

of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817,

822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B.     Discussion

Wellenstein argues that the ALJ's decision is flawed for three reasons:

1.     The ALJ failed to fully and fairly develop the record regarding Wellenstein's chronic pain and chronic fatigue syndrome.

2.     The agency erred by letting a final ruling stand without considering the effect of SSR 14-1P, a new regulation which went into effect during the pendency of Wellenstein's case.

3.     The ALJ improperly discredited Wellenstein's subjective complaints.

(docket no. 8)

### 1.     Failure to develop the record and failure to apply SSR 14-1P
#### a.     Applicable standards

As discussed above, at Step Two, the ALJ must consider whether a medically determinable impairment is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with

changes in a routine work setting. 20 C.F.R. § 404.1521(b). If the impairment would have no more than a minimal effect on the claimant's ability to work, it is not severe. *Page*, 484 F.3d at 1043. If the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley*, 133 F.3d at 588. If the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. The RFC determination is not based exclusively on the medical evidence, or on any one physician's opinion, but on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). While the RFC assessment draws from medical sources, it is ultimately an administrative determination reserved to the Commissioner. *Id*.

In determining the severe impairments and crafting an RFC, the ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). A social security hearing is a non-adversarial proceeding, and the ALJ must develop the record so that "deserving

claimants who apply for benefits receive justice." *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). An ALJ "is not obliged 'to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

### b. *Medical and opinion evidence*

The treatment period in the record is short, covering little more than two years. On February 24, 2011, Wellenstein saw Dr. Noreen O'Shea. AR 214. Wellenstein discussed the death of her mother and requested a refill on her already prescribed depression medication, Effexor. *Id*. Wellenstein reported that she and her husband were doing well in their new collectible business. AR 215. Dr. O'Shea diagnosed Wellenstein with depression, weight gain, and history of hypothyroidism. *Id*. She stated that:

> I did do a review of system on her and she denied any new problems, she denied any chest pain or shortness of breath, no GI problems, no GU problems, no musculoskeletal problems, no neurologic problems, no new skin problems.

AR 215.

On November 4, 2011, Dr. O'Shea wrote a letter requested by disability services. Dr. O'Shea noted she had only seen Wellenstein twice in the preceding year and wrote,

> [Wellenstein] has had some challenges over the last 12-15
> months because of the death of her mother. She had leaned
> on her mom for much support and additionally her husband
> had felt much affection for his mother-in-law so both of them
> are grieving in almost the same intensity. Most of the time
> she is able to function fairly well with her current dosing of
> antidepressant but she has found [she] does best with . . .
> working on her own in her own business. She has had some
> problems managing that because of her depression. She is
> able to remember to understand instructions, procedures and
> locations. When her depression and anxiety are at its worse
> she does have some difficulty carrying out instructions
> maintaining attention [and] concentration. She does seem to
> be able to interact appropriately with the public but as I said
> has done best with a smaller business that she and her husband
> had managed on their own. She does seem to use good
> judgment and respond appropriatly to changes in the work
> place and she is capable of handling benefits on her own
> behalf.

AR 207-208. Wellenstein followed up with Dr. O'Shea a week later, November 11, 2011. AR 235. She reported that the Effexor was not working, and she stopped taking it. AR 238. The balance of the examination dealt with depression-related issues. Dr. O'Shea again performed standard psychological testing. Wellenstein's score on the nine-question depression testing patient health questionnaire (PHQ-9) was 25/30, and her score on the seven item generalized anxiety disorder scale (GAD 7) was 21. AR 237. Additionally, Wellenstein described feeling weak and noting a persistent headache. AR 235.

On December 1, 2011, Wellenstein saw social worker Elizabeth Rembold for a moderate, single episode of depression. AR 234.

Disability services referred Wellenstein to Dr. Michael Baker, Ph.D., for an evaluation on December 8, 2011. AR 223. Dr. Baker noted that Wellenstein had good

responses and an appropriate appearance. Her primary symptoms were feelings of sadness and a desire to avoid people. AR 224-225. Dr. Baker diagnosed Wellenstein with anxiety disorder with avoidant personality traits. He assigned her a GAF score of 55. With regard to her mental limitations, Dr. Baker found, as follows:

> Client is capable of remembering and understanding instructions, procedures and locations. Attention, concentration and pace are adequate for carrying out instructions. Client may have some difficulty reportedly due to social anxiety affecting interacting, though that should improve with therapy. Her judgment and ability to respond appropriately to change in the workplace appears adequate.

AR 225. Dr. Baker deferred to Wellenstein's physician regarding limitations caused by other, non-mental, illnesses. *Id*.

On January 26, 2012, Wellenstein saw Dr. O'Shea. AR 230. Apparently, Wellenstein had switched depression medications and wanted to go back to taking Effexor. Wellenstein stated that Effexor helped with her social interactions. No acute symptoms were noted, but Dr. O'Shea performed a series of mental health tests. AR 231-232.

On February 24, 2012, Dr. O'Shea sent another letter to disability services. AR 228. In her letter, Dr. O'Shea summarized her encounters with Wellenstein since November of 2011. Of particular note, Dr. O'Shea stated that Wellenstein's primary problem was social anxiety disorder. AR 228-229.

Wellenstein saw Dr. O'Shea again on March 9, 2012. AR 248. Wellenstein reported depressive feelings and inquired if hormone replacement might help. AR 248. Dr. O'Shea diagnosed Wellenstein with obesity, hypothyroidism, moderate single episode major depression, seasonal pattern depression, and panic disorder with agoraphobia. AR 249. Dr. O'Shea discussed issues related to Wellenstein's obesity and stated that she would look into adjusting her depression medication. *Id*. Wellenstein

returned to Dr. O'Shea on April 26, 2012. AR 246. Wellenstein reported night sweats, being tired, and being in a "fog." AR 246. She also discussed her depression and the possibility of changing medications or taking hormones. AR 246-247. Dr. O'Shea changed Wellenstein's depression medication and also started her on a trial of hormones. AR 247-248.

Dr. O'Shea wrote a third letter on January 18, 2013. AR 251. Dr. O'Shea discussed Ms. Wellenstein's recurrent depression and social anxiety disorder, which made it difficult for her to function without her husband's support. AR 251. Concerning Ms. Wellenstein's fatigue, Dr. O'Shea wrote:

> She has also been diagnosed by a prior provider with chronic fatigue syndrome. This has been only partially responsive to medications. She also has hypothyroidism which is managed with medication.

AR 251.

### c.      Claims of chronic fatigue syndrome and the ALJ's findings

On January 23, 2013, Wellenstein appeared pro se before the ALJ for a hearing. As was discussed above, the medical evidence before the ALJ was limited and consisted entirely of treatment notes from Dr. O'Shea, letters from Dr. O'Shea, an agency evaluation by Dr. Baker, and one contact with a social worker/counselor. Relevant to this inquiry is the third letter provided by Dr. O'Shea at the request of the ALJ. Dated less than a week before the hearing, Dr. O'Shea noted that Wellenstein suffered from depression and social anxiety disorder. Dr. O'Shea also stated that a prior medical provider had diagnosed Wellenstein with chronic fatigue syndrome. AR 251. At the outset of the ALJ hearing, the ALJ stated that she had requested, and received, the newest letter from Dr. O'Shea. AR 25.

At the ALJ hearing, Wellenstein testified that she began treating for her depression in 1990 or 1991. AR 33. The ALJ asked what Wellenstein thought her primary disability

was.  Wellenstein initially stated that it was depression, but she testified that without medication she cannot get out of bed in the morning.  AR 34.  She stated that if she works for a day, she would spend the "next three or four days" in bed.  AR 34.  The ALJ asked why Wellenstein would have to sleep for several days after working.  In response, Wellenstein stated, "[b]ecause I would have to sleep.  With the chronic fatigue syndrome and with the depression and with everything else, it is impossible for me to keep up a work schedule."  AR 35.  The ALJ summed up Wellenstein's testimony, "[s]o if I've got this right, you feel that you can't work full time you need to sleep and that's why you're disabled?"  AR 36.  Wellenstein replied, "[w]ell, that's—no, the—depression is disabling."  *Id*.  The ALJ ended her questioning of Wellenstein shortly thereafter.  AR 37.  The entirety of the testimony at the ALJ hearing regarding Wellenstein's medical condition(s) was barely more than four transcript pages.  AR 32-37.  The ALJ did not ask any questions regarding Wellenstein's social anxiety or chronic fatigue syndrome.  *Id*.

In her ruling, the ALJ did not discuss chronic fatigue syndrome, finding that Wellenstein's impairments were obesity, depression, and anxiety.  AR 11.

### d.    Analysis

Wellenstein's first two arguments are closely related in that they both deal with Wellenstein's (alleged) chronic fatigue syndrome (CFS).  Wellenstein first argues that the ALJ erred by failing to develop the record regarding the CFS.  Second, she argues that the case should be remanded so that the agency could consider her claim in light of a new CFS regulation, SSR 14-1p.

### i.    Duty to develop the record

As was discussed above, a social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record.  Wellenstein argues that the ALJ failed to properly develop the record regarding Wellenstein's chronic fatigue syndrome.

The Commissioner agrees that the ALJ did not develop the record regarding claimant's CFS, but argues that there was no need to do so.

There really are no disputed facts regarding this issue, even if the parties try to color the facts differently. Although Wellenstein often complained of fatigue (the symptom) and depression in the paperwork filled out in the course of her disability case, she never identified chronic fatigue syndrome as one of the conditions. The limited medical record in the case, summarized above, has numerous instances of Wellenstein talking about depression and sleep issues. At one point, Dr. O'Shea asks Wellenstein whether she either sleeps too little or too much, and Wellenstein stated that she either sleeps too little or too much most days. AR 232. But, Dr. O'Shea does not mention a diagnosis of chronic fatigue syndrome until the third and final letter. Then, during the hearing, the bulk of Wellenstein's testimony about her condition concerned how she is exhausted, sleeps too much, and cannot work. Wellenstein identified chronic fatigue syndrome as one of her conditions, but the ALJ never asked a single follow-up question about CFS.

In making the argument that the ALJ failed to develop the record, Wellenstein cites three primary cases. In the first, *Miatke v. Comm'r of Soc. Sec.*, 2009 WL 909619 (N.D. Iowa 2009), Chief Magistrate Judge Scoles remanded a case for failure to develop the record. *Id*. at *7. However, as pointed out by the Commissioner, the facts of that case are radically different from those of Wellenstein's case. In *Miatke*, the claimant's attorney had a miscommunication about sending the ALJ additional medical evidence. After the hearing, the ALJ held the record open for additional records that were discussed by the claimant during the hearing. *Id*. at *4-*5. Evidence presented to Judge Scoles showed that the claimant's attorney had faxed the additional evidence to the ALJ, although the ALJ claimed to have never received the additional evidence. *Id*. Judge Scoles remanded the case so that the mis-faxed evidence could be considered by the ALJ.

*Id.* at *6. In the second case, *Martin v. Apfel*, 983 F. Supp. 812, 815 (S.D. Iowa 1997), Judge Pratt remanded a case where a mistake was uncovered during the hearing about the extent of the claimant's treatment. *Martin*, 983 F. Supp. at 814-815. The ALJ thought the claimant had only been seen twice for a particular problem, when, in fact, the claimant's treatment was ongoing. *Id.* However, the ALJ did not request, and was not provided the additional treatment records. Judge Pratt chastised both the ALJ and claimant's attorney for not providing the missing records after their existence was revealed during the hearing. The *Martin* situation is closer to Wellenstein's because Wellenstein, like Martin, mentioned the existence of an additional medical issue during the hearing. (An important distinction being that in the *Martin* case, the claimant had an attorney, while Wellenstein represented herself before the ALJ.) The final decision relied upon by Wellenstein is *Cox v. Apfel*, 160 F.3d 1203 (8th Cir. 1998). In that case, the Eighth Circuit Court of Appeals found that the ALJ failed to develop the record because it was obvious that there had to be additional records available based on the claimant's issue. Specifically, the *Cox* claimant was using morphine for routine pain control, but the medical records mysteriously ended months before the hearing. *Cox*, 160 F.3d, at 1209. The Eighth Circuit found that because morphine is such an extreme and unusual medication for routine pain control, it should have been obvious to the ALJ that there had to be more medical records about the ongoing pain issue. *Id.* There are some parallels between this case and *Cox*; specifically that Dr. O'Shea's statement about the previous diagnosis of CFS should have put the ALJ on notice about additional records, but the situation in *Cox*, where there were years' worth of pain medication records that suddenly stopped, was far more blatant.

The Commissioner's argument is simple: Wellenstein never brought up CFS until the hearing. Thus, the ALJ was under no duty to investigate CFS. The fatal flaw in that argument, of course, is that the ALJ's duty to develop the record does not end a month,

a week, or a day before the hearing. The duty to develop the record continues until the end of the hearing. If this case were decided on the evidence available two weeks before the hearing, the record would be devoid of references to CFS. But, by the end of the hearing, there had been two key statements regarding CFS. First, the ALJ instructed Wellenstein to get an updated letter from Dr. O'Shea before the hearing. In that (very short) letter, Dr. O'Shea point blank stated that a previous medical provider diagnosed Wellenstein with CFS. That statement was not an obscure tidbit buried in thousands of pages of evidence. There are less than a dozen relevant medical records in this case. It was an obvious piece of information in an obvious place, and I know that because that letter was discussed by the ALJ both during the hearing, and in her ruling. It was evidence the ALJ had and chose to ignore.

This omission is made even more blatant after considering the testimony from the hearing. The ALJ first asked about Wellenstein's health on page 32 of the administrative record. On page 34 of the record, Wellenstein said the reason she could not work was because she slept too much. The conversation about her sleeping too much continues until page 35, where Wellenstein says she has CFS. The conversation about sleeping too much continues through page 36, where the ALJ abruptly states that she has no further questions. So, to be clear, in a hearing about her alleged disability, the ALJ questioned Wellenstein about her health for a total of four pages of transcript (three or four minutes of real time). For almost the entirety of that conversation, Wellenstein talks about how her biggest problem is that she sleeps too much. She then states (as Dr. O'Shea had done in a letter five days earlier) that she has CFS. Based on those facts, the ALJ's failure to develop the record is pretty clear.

That is not to say that, at the first mention of CFS, the ALJ needed to halt the proceedings pending more medical records. In fact, the bar to further develop the record in Wellenstein's case was, initially, very low. After listening to Wellenstein talk about

her CFS (the symptom) and blame it on CFS (the illness), the ALJ could have simply asked a question about CFS. "What provider diagnosed you with CFS?" "How long have you had CFS?" "What medication do you take for CFS?" All are questions that would have developed the record. Based on Wellenstein's answers, the ALJ (and I) would have been in a better position to determine if there were additional medical records relevant to Wellenstein's claim. But, the ALJ failed to do that and the record now sits undeveloped.

As Judge Pratt stated, a disability hearing should not be a game of cat and mouse. ALJs have a difficult job and cannot be expected to chase medical records they have no idea exist. But, in this case, both the treating doctor and the claimant put the ALJ on notice that CFS was a possible issue. After listening to the claimant testify almost exclusively about her chronic sleepiness, the ALJ's burden to develop the record kicked in, at least to the extent that the ALJ needed to ask a single question about CFS. By failing to do so, the ALJ rendered the proceedings "unfair" and "prejudicial." Accordingly, I must remand the case for further development of the record regarding Wellenstein's CFS.

### ii. New ruling

Wellenstein's second argument is more technical, dealing with an updated SSR regulation. As set out in Wellenstein's brief:

> The Commissioner recently released a new ruling concerning the evaluation of cases involving chronic fatigue syndrome. Social Security Ruling, SSR 14-1p; Titles II and XVI: Evaluating Claims Involving Chronic Fatigue Syndrome (CFS), 79 Fed. Reg. 18,750 (April 3, 2014). The ruling replaces SSR 99-2p. *Id*. at 18,751. . . [T]his Court should remand Ms. Wellenstein's claim so the ALJ may have the opportunity to apply SSR 14-1p.

(docket no. 8, p. 14, 15)

The Commissioner does not dispute that a new ruling took effect regarding CFS; nor does the Commissioner dispute that the new ruling substantially alters how the agency evaluates CFS. Rather, the fight in this case is whether Wellenstein's claim was still before the agency at the time the new ruling took effect. Specifically, the Commissioner argues that because the new ruling took effect after the ALJ's decision, it should not apply to Wellenstein's case. The Commissioner also argues that even if the new rule should apply to Wellenstein's case, it would have no effect on the outcome.

At the outset, I must talk about the new SSR at issue. Some medically determinable impairments, such as diabetes, have been relatively well understood by the medical community for decades. But, CFS is a developing area of medicine, and there have been recent changes in the way the medical community understands and diagnoses CFS. Accordingly, the Commissioner has had to update the way the agency establishes CFS as a medical impairment in disability cases. The Commissioner issued the agency's prior CFS ruling in 1999. That ruling, SSR 99-2P, directed the agency to look for diagnostic/medical signs of CFS when evaluating a plaintiff's claim. Specifically, it stated:

> Under the CDC definition, the diagnosis of CFS can be made based on an individual's reported symptoms alone once other possible causes for the symptoms have been ruled out. However, the . . . statutory and regulatory provisions require that, for evaluation of claims of disability under the Act, there must also be medical signs or laboratory findings before the existence of a medically determinable impairment may be established. . . The following medical signs and laboratory findings establish the existence of a medically determinable impairment in individuals who have CFS. Although no specific etiology or pathology has yet been established for CFS, many research initiatives continue, and some progress has been made in ameliorating symptoms in selected individuals. With continuing scientific research, new medical

evidence may emerge that will further clarify the nature of CFS and provide greater specificity regarding the clinical and laboratory diagnostic techniques that should be used to document this disorder.

Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (Cfs), SSR 99-2P, 1999 WL 271569 (1999). The ruling issued in 2014, SSR 14-1p, substantially changed the way the agency determined CFS, putting the initial burden on whether a medical source has diagnosed CFS. As set out in the new ruling:

A person can establish that he or she has an MDI of CFS by providing appropriate evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of CFS; determine whether the person's symptoms have improved, worsened, or remained stable; and establish the physician's assessment of the person's physical strength and functional abilities. We will find that a person has an MDI of CFS if a licensed physician diagnosed CFS, and this diagnosis is not inconsistent with the other evidence in the person's case record. Under the CDC case definition, a physician can make the diagnosis of CFS based on a person's reported symptoms alone after ruling out other possible causes for the person's symptoms. However, as mentioned, statutory and regulatory provisions require that, for evaluation of claims of disability under the Act, there must also be medical signs or laboratory findings before we may find that a person has an MDI of CFS. If we cannot find that the person has an MDI of CFS but there is evidence of another MDI, we will not evaluate the impairment under this SSR. Instead, we will evaluate it under the rules that apply for that impairment.

Titles II and XVI: Evaluating Claims Involving Chronic Fatigue Syndrome (CFS), SSR 14-1p, 79 FR 18750-02 (2014).

As noted, above, the Commissioner agrees that a policy change occurred, but argues that the change came after Wellenstein's case had been decided. Accordingly, the chronology of events is important to this claim. The ALJ issued her decision in this case on February 13, 2013. Per its own terms, SSR 14-1p's effective date is April 3, 2014. The Appeals Council declined Wellenstein's request for further review on April 9, 2014. AR 1. The Eighth Circuit Court of Appeals has stated that, "if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Ingram v. Barnhart*, 303 F.3d 890, 893 (8th Cir. 2002). In the case of *Sloan v. Astrue*, 499 F.3d 883 (8th Cir. 2007), the plaintiff had an ALJ hearing in January of 2005. A new SSR ruling affecting the plaintiff's case issued in August of 2006, after the case had already been appealed to and decided by the Southern District of Iowa. *Sloan*, 499 F.3d at 889. The Eighth Circuit Court of Appeals remanded, stating, "A remand is appropriate in this case. Sloan presented evidence from her health-care providers which could very well have led to a different result had the ALJ assessed them in accordance with [the new SSR]." *Id.* However, in a case decided shortly thereafter, *Van Vickle v. Astrue*, 539 F.3d 825 (8th Cir. 2008), the Eighth Circuit Court of Appeals denied a remand in a case involving the same new SSR as in the *Sloan* case, finding that, although the policy changed during the pendency of the case, the policy did not affect the case. *Id.* at 829 n.6. Thus, the law on this issue seems clear; if the policy changed at any point during the case's life, remand is appropriate if the policy would actually affect the case.

Although the Commissioner claims that SSR 14-1p should not apply to Wellenstein's case because it did not issue until after the ALJ's decision, that argument is clearly meritless. The Commissioner cites no law that would support its position and,

as discussed above, the Eighth Circuit Court of Appeals has remanded cases to the ALJ when a policy change occurred as late as when the case was before a district court. The Commissioner's better argument is that remand is not appropriate because the policy change does not affect Wellenstein's case.

Wellenstein argues that the change to SSR 14-1p would have impacted the outcome of her case because she had been diagnosed with CFS and, under the new guideline, the ALJ would have had to consider the prior CFS diagnosis as an initial sign that she had the medical impairment of CFS. However, as discussed above, the ALJ did not consider any of the evidence that Wellenstein had CFS. Thus, if the ALJ's prior decision were correct, SSR 14-1p would be irrelevant to Wellenstein's case. However, I have already found that remand in this case is appropriate so the ALJ can properly develop the record regarding Wellenstein's CFS claim. Accordingly, on remand, the ALJ must consider Wellenstein's allegation of CFS in light of the new policy, SSR 14-1p.

### 2. *Evaluation of subjective allegations*
#### a. *Applicable standards*

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id*.

To determine a claimant's credibility, the ALJ must consider:

(1)    the claimant's daily activities;

(2)    the duration, intensity, and frequency of pain;

(3)    the precipitating and aggravating factors;

(4)    the dosage, effectiveness, and side effects of medication; and

(5)     any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).   "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'"   *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).   However, the Eighth Circuit Court of Appeals has repeatedly stated that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."   *Hogg v. Shalala*, 45 F.3d 276, 278-79 (8th Cir. 1995) (citing *Harris v. Sec'y of Dep't of Health and Human Servs.*, 959 F.2d 723, 726 (8th Cir. 1992)).   A claimant need not prove she is bedridden or completely helpless to be found disabled.   *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005).   Yet, the Eighth Circuit Court of Appeals has also held that "cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."   *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

With respect to determining whether activities of daily living are inconsistent with subjective complaints of disability, the ALJ must consider the "quality of the daily activities and the ability to sustain activities, interest, and relate to others over a period of time and the frequency, appropriateness, and independence of the activities."   *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (citing *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007)).   "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints."   *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)).   An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010), but such evidence is one factor that the ALJ may consider.   *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008).   The ALJ need

not explicitly discuss each factor as long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, a court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not my role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, [the Court] must affirm the decision of the Commissioner.") (citations and quotations omitted). However, in reviewing the ALJ's credibility determination, I must consider the evidence that both supports and detracts from the ALJ's decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). It is not appropriate to reverse the ALJ's decision simply because some evidence would support a different conclusion. *Perks*, 687 F.3d at 1091. An ALJ is not required to discuss every piece of evidence that was submitted, and an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). I must defer to the ALJ's determination regarding the credibility of testimony as long as it is supported by good reasons and substantial evidence. *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### b.    The ALJ's findings

As has been discussed above, Wellenstein claims disability based on depression and anxiety.   She claims that those conditions (and the CFS discussed above) have rendered her unable to work.   The ALJ considered Wellenstein's claims and stated:

> In considering the claimant's allegations, the undersigned finds that the claimant is not fully credible to the extent of permanent disability and inability to work. Overall, the undersigned finds that claimant has experienced bereavement with loss of her mother and has received antidepressant medications from Dr. O'Shea for three years.   At hearing, she reported she had been taking antidepressant medications for 22 years, prior to the alleged onset date, but has received no regular counseling and has never been hospitalized.   She gets med refills every 6-8 months and has done so for 20 years.    During that time she was able to work and function as the bookkeeper for the family business.   She did not stop work due to a severity in symptoms, rather because they lost a major customer account.

AR 15.  The ALJ went on to say:

> [Wellenstein's] credibility is reduced by statements that she cannot afford to drive to Sioux City, Iowa (where she worked with her husband for 22 years in a cleaning business) any longer-when there is no work in the rural community of population 700 where she lives.    Transportation issues are not the basis for disability.   She and her husband own their own home on her dad's property and are not willing to relocate.    She stopped working because her husband's company went out of business and not because of any specific functional limitations.   Her husband applied for and since 2011 receives disability benefits as a result of mental illness. Claimant said she didn't apply for disability after they lost their main cleaning account, she stayed at home for a year helping care for her husband and her dad who lives next door, then decided to apply based on her own mental health

26

> concerns.  She said she is fatigued and couldn't work a regular
> work schedule, but can do basic household chores and use a
> computer.  For the cleaning business, she did the payroll and
> accounts, she can use a computer.

AR 15-16.  The ALJ also discounted the third-party report provided by Wellenstein's husband, stating:

> Claimant's husband Richard submitted a letter that his wife
> "can't work at all" but has no problem with personal care,
> can fix meals daily, shop for food and clothes, handle a
> checkbook.  He stated she "can't concentrate" but can read,
> crochet, cross stitch and follow instructions "average."  Out
> of natural devotion, it is not uncommon for a husband to be
> concerned about his wife's mental health; but claimant said
> her husband filed for and receives disability benefits based on
> "somatoform" disorder and she cared for him for a year.
> She does the driving and helps care for her husband and her
> dad who lives next door.  Great weight is not given to his
> statements of his wife's disability.

AR 16.

### c.    *Analysis*

Wellenstein argues that the ALJ improperly found her subjective complaints to be not credible.  The Commissioner argues the ALJ's decision is supported by substantial evidence.

As noted, above, the ALJ cited several factors in support of her finding:  1) Wellenstein's work history, specifically, that she filed for disability not because of a change in her health but because her business closed; 2) the inconsistent medical record, specifically, a history of sporadic treatment, the fact that her depression seems to be controlled by medication, and the fact that no doctor noted disabling symptoms; and 3) her ability to perform functions of daily living.  All three of those points are acceptable under applicable Eight Circuit Court of Appeals's precedent.  However, as I stated above,

the ALJ erred in this case by not properly developing the record. Many, if not most, of Wellenstein's subjective complaints seem to relate more to CFS than to depression or anxiety. The ALJ's analysis of Wellenstein's subjective complaints may be fundamentally different when the ALJ views Wellenstein's complaints in light of a more fully developed CFS record. Accordingly, on remand, the ALJ must reconsider Wellenstein's subjective complaints in light of the record as it exists at that time.

## III.   CONCLUSION

For the reasons set forth herein, the Commissioner's determination that Wellenstein was not disabled is **reversed and remanded** for further proceedings. **Judgment shall be entered** against the Commissioner and in favor of Wellenstein. On remand, the ALJ must fully and fairly develop the record concerning Wellenstein's alleged CFS. The ALJ must then re-analyze Wellenstein's claim based on the fully-developed record.

**IT IS SO ORDERED**.

**DATED** this 30th day of September, 2015.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA